UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MELISSA MARIE FRANCETICH,

    Plaintiff,

v.

                                                                                Case No. 23-cv-11046
                                                                                Hon. Matthew F. Leitman

OAKLAND COUNTY, *et al.*,

    Defendants.
_____/

**ORDER (1) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 19), (2) DENYING DEFENDANT'S MOTION TO STRIKE (ECF No. 29), AND (3) TERMINATING DEFENDANTS' MOTIONS TO DISMISS AND MOTIONS IN LIMINE (ECF Nos. 23, 25, 26) WITHOUT PREJUDICE AS MOOT**

In this action, Plaintiff Melissa Marie Francetich alleges that deputies employed by the Oakland County Sheriff's Office violated her Fourth Amendment rights when they subjected her to an invasive "body cavity search in violation of the Fourth Amendment of the United States Constitution." (Resp., ECF No. 27, PageID.424.) But she has not sued the deputies who allegedly conducted that search. Instead, she has sued Oakland County and the Oakland County Sheriff, Michael Bouchard, in his *personal* capacity. (*See* Compl., ECF No. 1.) The claim against Bouchard fails because it is undisputed that he had no personal involvement in the allegedly-offending search. And the claim against Oakland County fails because the alleged search, if it occurred, was directly contrary to the County's express policy.

1

For those reasons, and the additional reasons explained below, the Court **GRANTS** Defendants' motion for summary judgment. (*See* Mot., ECF No. 19.)

# I

## A

On September 6, 2020, Francetich was golfing with a friend in Romeo, Michigan. (*See* Francetich Dep. at 9:10-21, ECF No. 19, PageID.138.) On their way home from the course, Francetich and her friend stopped at a local bar. (*See id.* at 11:12-20, PageID.139.) Francetich thereafter began driving the pair home. (*See id.* at 12:11-16, PageID.139.)

About 15 minutes after leaving the bar, Francetich was pulled over for speeding over by an Oakland County Sheriff's Deputy. (*See id.* at 12:21-23, PageID.139; *see also* Police Rpt., ECF No. 19, PageID.169-175.) When speaking with Francetich, the deputy "noticed that she was slurring her words" and had the "odor of intoxication coming from her person." (Police Rpt., ECF No. 19, PageID.172.) He then conducted a series of field sobriety tests – which Francetich failed – and he administered a preliminary breathalyzer test. (*See id.*) That test showed that Francetich had a blood alcohol level of .208, nearly three times the legal limit. (*See id.*) The deputy then arrested Francetich for operating a vehicle while intoxicated. (*See id.*, PageID.173.)

2

**B**

After she was arrested, Francetich was placed into the back of a police car and transported to McLaren Hospital so that her blood could be drawn before she was booked into the Oakland County Jail.[1] (*See id.*)  She was then transported from the hospital to the jail. (*See id.*)  While in the police car, Francetich repeatedly threatened to kill herself.  Francetich said, among other things, that "I can't wait to get out of jail. Just so I can kill myself. I can't wait"; "I'm so sick of you. I'm so sick of this. I'll do it. I'm about to blow my brains out and I can't wait"; and "That's okay. I'll go do my like five hours in Oakland County Jail. Then, I'm gonna shoot myself in the head and I'm gonna write your fucking name with my blood." (Tr. of Police Video, ECF No. 19, PageID.193, 200, and 226.)

**C**

When Francetich arrived at the Oakland County Jail, the arresting deputy informed the intake deputies that Francetich had talked about committing suicide. (*See* Police Video, ECF No. 19-4; Intake Rpt. ECF No. 19, PageID.249.)  "Due to [Francetich's] statements and actions, she was . . . placed on active suicide watch for her safety." (Intake Rpt. ECF No. 19, PageID.249.)  As part of the suicide watch protocol, Francetich was required to change from her clothes into an anti-suicide

---

[1] That blood test confirmed that Francetich's blood alcohol level was .215. (*See* Police Rpt., ECF No. 19, PageID.174.)

3

gown. (*See id.*)  However, when Francetich was taken to a private cell where she was directed to change into the anti-suicide gown, Francetich refused. (*See id.*)  Deputies then removed Francetich's clothes and changed her into the gown. (*See id.*).

Francetich says that it was during this changing of her clothes that she was subjected to an invasive "strip and body cavity search" (the "Body Cavity Search"). (Resp., ECF No. 27, PageID.451.)  According to Francetich, during the Body Cavity Search, deputies removed her clothes, forcibly "pull[ed] out [her] tampon," "spread[] [her] cheeks and stuff," and "had their hands all over [her] . . . searching for something." (Francetich Dep. at 30:14-32:17, ECF No. 19, PageID.143-144.) Francetich insists that "[t]he Defendants' body cavity search was conducted without probable cause to believe that there was a danger of a hidden weapon or suicidal instrument in her vagina" and that "Defendants [have] provide[d] no evidence, or even argument as to why a body cavity search of [her] vagina was believed necessary." (Resp., ECF No. 27, PageID.444.)

## II

Francetich filed this action on May 3, 2023. (*See* Compl., ECF No. 1.)  She brings three claims all arising out of the Body Cavity Search:

- "Claim for Violation of Fourth Amendment Unreasonable Strip and Body Cavity Search pursuant to 42 USC § 1983" (Count I);

4

- "42 USC § 1983 Claim for Violation of Eighth Amendment Infliction of Cruel and Unusual Punishment" (Count II); and

- "42 USC § 1983 Claim for Violation of Integrity and Autonomy of her Person and for Invasion of her Privacy" (Count III).

(*Id.*, PageID.11-14.)

Notably, Francetich does not bring any of her claims against the deputies allegedly involved in the Body Cavity Search. Instead, she brings her claims against Defendant Bouchard, the Oakland County Sheriff, in his personal capacity, and against Oakland County.

On September 17, 2024, Defendants filed a motion for summary judgment. (*See* Mot., ECF No. 19.) Under the Court's Local Rules, Francetich's response was due 21 days later. *See* E.D. Mich. Local Rule 7.1(e)(2)(A). But Francetich did not file a response by that deadline. Nor did she file a response during the following two months. Accordingly, on December 18, 2024, Defendants filed a motion to dismiss based on Francetich's failure to prosecute her claims. (*See* Mot., ECF No. 23.) After the Court issued an order directing Francetich to show cause why it should not grant Defendants' motions and/or dismiss her Complaint (*see* Order, ECF No. 24), Francetich filed her opposition to Defendants' summary judgment motion on January 13, 2025. (*See* Resp., ECF No. 27.)

Defendants have also filed several other motions that are now pending before the Court. On January 14, 2025, the Defendants moved to strike Francetich's

5

response to their summary judgment motion as late.[2] (*See* Mot., ECF No. 29.) In addition, Defendants have filed motions *in limine* to exclude (1) Francetich's expert witnesses (ECF No. 25) and (2) Francetich's claims of economic damages (ECF No. 26).

The Court has reviewed all of the parties' submissions and is now prepared to rule on the motions.

### III

Defendants have moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Under that rule, a movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact." *SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 312, 326-27 (6th Cir. 2013) (quoting Fed. R. Civ. P. 56). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* But "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson v. Liberty Lobby, Inc.*, 477

---

[2] The Court **DENIES** Defendants' motion to strike. Francetich filed her response to the Court's show cause order on the day that it was due, and the Court concludes that the best course of action is to consider the merits of her opposition to Defendants' motion for summary judgment.

U.S. 242, 252 (1986). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251–52.

### IV

### A

The Court begins with Francetich's claims against Defendant Bouchard in his personal capacity. Those claims fail because the undisputed evidence is that Bouchard had no knowledge of, and no involvement with, the Body Cavity Search.

It is well-settled that a civil-rights plaintiff must allege the personal involvement of a defendant to state a claim under Section 1983. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–92 (1978) (holding that Section 1983 liability cannot be based upon a theory of *respondeat superior* or vicarious liability); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009) (same). Indeed, the general rule is that "in the face of [a] motion for summary judgment, a § 1983 plaintiff must produce evidence supporting each individual defendant's *personal involvement in the alleged violation* to bring that defendant to trial." *Pineda v. Hamilton Cnty., Ohio*, 977 F.3d 483, 491 (6th Cir. 2020) (emphasis added) (quoting *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 291 (3d Cir. 2018)). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Johnson v. Mosley*, 790 F.3d

649, 653 (6th Cir. 2015) (explaining that a plaintiff "must demonstrate that each defendant . . . , through his or her own individual actions, *personally* violated [the] plaintiff's rights") (emphasis added).

Here, Bouchard has submitted an affidavit in which he says under oath that:

- He is not "personally involved with receiving arrestees/detainees/ inmates into the Oakland County Jail";

- He does not "know Plaintiff Francetich";

- "Until [he] was made aware that this lawsuit was filed, [he] had no knowledge that Plaintiff Francetich was ever arrested or detained in the Oakland County Jail";

- He "had no interaction with Plaintiff Francetich while she was in the Oakland County Jail"; and

- He "did not direct, order, or instruct any of [his] subordinate deputies to take any action, or inaction, regarding Plaintiff Francetich during her arrest and detention in the Oakland County Jail."

(Bouchard Aff. at ¶¶ 6, 10-13, ECF No. 19, PageID.265-266.)

Francetich has not countered Bouchard's sworn statement with any evidence that Bouchard was involved, in any way, in the Body Cavity Search. Indeed, at her deposition, Francetich confirmed that she only knew Bouchard "from the news"; that he was not "directly involved" or "personally involved" in her interactions with other sheriff deputies on the day in question; and that she never saw or talked to Bouchard. (Francetich Dep. at 26:5-28:2, ECF No. 19, PageID.142-143.) Moreover, Francetich

8

acknowledged that apart from "assuming" that Bouchard was involved in the Body Cavity Search "because he's the head honcho" of the sheriff's office, she did not "have . . . anything concrete" to show that Bouchard "was directing the[] deputies to do [anything] to [her]." (*Id.* at 27:11-17, PageID.143.)

Instead of identifying evidence showing Bouchard's personal involvement in the Body Cavity Search, Francetich appears to argue that Bouchard may be held liable for the search under the Supreme Court's decision in *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986). Francetich says that because Bouchard was the Oakland County Sheriff Office's "executive policy maker," he "had direct responsibility to provide appropriate and safe premises in the Oakland County Jail for inmates, and to establish policies for the protection of psychologically distraught and vulnerable detainees, such as [her]." (Resp., ECF No. 27, PageID.436.) The Court disagrees that Bouchard can be held liable under *Pembaur* for two reasons.

First, Francetich has not persuaded the Court that an individual defendant, like Bouchard, who is sued in his *personal* capacity, can be held liable under *Pembaur*. In *Pembaur*, the Supreme Court held that "*municipal liability* may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur*, 475 U.S. at 480 (emphasis added). Francetich has not cited any case in which an *individual* defendant, as opposed to a municipal defendant, has been held liable in his personal capacity under *Pembaur*. And there appears to be law that

9

*Pembaur* does not impose such individual liability. *See Stewart v. Town of Rossville, Tennessee*, 622 F.Supp.3d 655, 670 (W.D. Tenn. 2022) (granting summary judgment in favor of chief of police and explaining that "*Pembaur* . . . says nothing about officials' individual liability and is therefore inapplicable to [p]laintiff's claims against [the chief of police] himself"); *Rulli v. City of Pittsburgh*, No. 20-cv-965, 2021 WL 1391761, at *5 (W.D. Penn. Mar. 23, 2021) ("*Pembaur* . . . concerns the municipal liability of municipal entities, not the individual liability of supervisors").

Second, for the reasons explained in more detail below, to the extent that Bouchard issued any policies related to body cavity searches of detainees at the Oakland County Jail, those policies prohibited the very conduct that Francetich says she experienced during the Body Cavity Search. And Francetich has not identified any evidence that Bouchard's deputies were regularly violating that policy. Nor has she produced any evidence that Bouchard should have been aware that detainees like Francetich needed additional protection from invasive body cavity searches like the one she described.

For all of these reasons, Francetich's claim against Bouchard fails, and Bouchard is entitled to summary judgment.

**B**

Defendants next argue that Francetich has failed to establish Oakland County's liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). (*See* Mot., ECF No. 19, PageID.124-132.) The Court agrees.

Under *Monell*, "a municipality cannot be held liable under [42 U.S.C.] § 1983 simply because one of its employees violated the plaintiff's constitutional rights. In other words, § 1983 does not impose *respondeat superior* liability on municipalities. In order to impose § 1983 liability on a municipality, the plaintiff must prove that the constitutional deprivation occurred as a result of an official custom or policy of the municipality." *Smith v. City of Troy, Ohio*, 874 F.3d 938, 946 (6th Cir. 2017) (internal citations omitted). "There are at least four avenues a plaintiff may take to prove the existence of a municipality's illegal policy or custom. The plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). Francetich has not presented sufficient evidence to proceed under any of these four avenues.

11

**1**

First, Francetich cannot establish Oakland County's liability based on its "official agency policies" because the undisputed evidence in the record is that the relevant Oakland County policy *prohibits* the very conduct that Francetich says she experienced during the Body Cavity Search. Francetich and the Defendants agree that "the relevant [policy] involved in this case [is Oakland County's] Cavity Search Policy" dated March 6, 2018. (Resp., ECF No. 27, PageID.441.) That policy, Policy and Procedure No. 336, provides that (1) "[a] body cavity search shall not be conducted unless there is a search warrant signed by a judge or magistrate," (2) "[t]he body cavity search shall be conducted by appropriate medical personnel only," and (3) the person to be searched "shall be transported to the hospital listed in the search warrant" where the search would be conducted. (Policy and Procedure No. 336, ECF No. 19, PageID.300-301.) "Only a licensed physician or physician's assistant, licensed practical nurse, or registered professional nurse acting with the approval of a licensed physician may conduct the search." (*Id.*, PageID.303.) Thus if, as Francetich claims, she was subjected to a body cavity search at the Oakland County Jail by sheriff deputies – and not by licensed medical personnel at a local medical facility – such a search would have been in direct violation of Policy and Procedure No. 336. Accordingly, Francetich has no claim based upon "official agency

policies" because the relevant policy adopted by Oakland County expressly prohibited the conduct that she says she experienced.

2

Second, Francetich cannot proceed with her municipal liability claim based upon any actions "taken by [Oakland County] officials with final decision-making authority." No official with "final decision-making authority" took any specific action with respect to Francetich. And while Oakland County officials did issue Policy and Procedure 336, as explained above, that policy barred the type of body cavity search that Francetich says happened here. Thus, Francetich has failed to show that she was injured by any act taken by any Oakland County official with final decision-making authority.

3

Third, Francetich cannot succeed on the theory that Oakland County failed to train its deputies. "[T]his theory has 'demanding elements.' Among other things, a county must have acted with 'deliberate indifference' to whether the inadequate training would lead its deputies to [conduct an unconstitutional body cavity search]. To prove this deliberate indifference, a plaintiff typically must show that the county's officers have engaged in a 'pattern' of [unconstitutional behavior] that proper training would have prevented." *Farris v. Oakland County, Michigan*, 96 F.4th 956, 969 (6th Cir. 2024) (internal citation omitted) (first quoting *Gambrel v.*

*Knox County*, 25 F.4th 391, 408 (6th Cir. 2022); then quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)).

Francetich has not offered any evidence of a pattern of unconstitutional behavior here. Nor has she identified any evidence that Oakland County had notice that its deputies were regularly not complying with Policy and Procedure No. 336 or that its deputies were subjecting detainees to body cavity searches in violation of the County's express policies and/or the Constitution.

Instead, Francetich argues that under the Sixth Circuit's decision in *Farris*, 96 F.4th 956, "[w]here [a] plaintiff pleads a failure-to-train claim, a single constitutional violation may justify county liability." (Resp., ECF No. 27, PageID.450.) But Francetich oversimplifies the holding in *Farris,* and that decision, when properly understood, does not help Francetich. In *Farris*, the Sixth Circuit explained that "in 'rare' situations . . . it might be 'patently obvious' that *a lack of a specific type of training* would lead officers to [violate the constitution]," and it said that in "such a situation, even the single unconstitutional action in the plaintiff's own case might suffice to establish the county's deliberate indifference." *Farris*, 96 F.4th at 969 (emphasis added) (quoting *Connick*, 563 U.S. at 62). Here, however, it would not have been "patently obvious" that a lack of training in body cavity searches would lead to unconstitutional cavity searches by Oakland County sheriff's deputies because the County's policy specifically *prohibited* the deputies from conducting

14

those searches. Thus, the rationale explained by the Sixth Circuit in *Farris* is inapplicable here.

Francetich further counters that she may proceed with her *Monell* failure-to-train claim under this Court's decision in *Campbell v. Mack*, No. 16-cv-12922, 2018 WL 4352695 (E.D. Mich. Sept. 12, 2018), *aff'd* 777 F. App'x 122 (6th Cir. 2019). Francetich says that in *Campbell*, "[t]his Court analyzed whether a claim of an improperly conducted body cavity search violated the Fourth Amendment where the City of Allen Park did not provide training as to the specific, commonly recurring circumstances. Allen Park's failure to present any evidence providing the officer with direction as to when and how to conduct a body cavity search justified denial of summary judgment." (Francetich Resp., ECF No. 27, PageID.446.) Francetich's reliance on *Campbell* is misplaced for several reasons.

First, Francetich's description of the Court's holding in *Campbell* is not accurate. In *Campbell*, the Court *granted* summary judgment in favor of Allen Park on the plaintiff's claims that (1) Allen Park failed "to provide adequate training . . . regarding body cavity searches" and (2) Allen Park "had a custom or practice of conducting and/or tolerating unconstitutional body cavity searches." *Campbell*, 2018 WL 4352695, at *8–9. The Court held that Allen Park was entitled to judgment on those claims because, like Oakland County here, Allen Park presented evidence that it prohibited its officers from conducting those searches, and the plaintiff had

15

not presented any evidence that Allen Park knew about a clear and persistent pattern of illegal body cavity searches in violation of its stated policy. *See id.*

Second, while the Court did allow the plaintiff in *Campbell* to proceed on a separate municipal liability claim alleging that "Allen Park failed to adequately train and/or had a custom or practice of conducting and/or tolerating unconstitutional strip searches," *id.*, that holding does not help Francetich here. The Court allowed the strip search claim to proceed because "there [was] reason to believe that Allen Park Officers (and [the defendant officer] in particular) conduct[ed] strip searches . . . on a recurring basis." *Id.* at *10. Thus, a fact-finder could have determined that there was an obvious need to provide training on strip searches in order to ensure that the regularly-occurring searches complied with constitutional requirements. Here, in contrast, Oakland County's policy expressly prohibited deputies from conducting body cavity searches at the jail and in the absence of medical personnel. Thus, unlike in *Campbell*, there was no reason to believe that deputies would be conducting these searches and no reason to believe that training on these searches was necessary to prevent constitutional violations. For all of these reasons, *Campbell* does not control here.

### 4

Finally, Francetich cannot succeed on a theory that Oakland County ignored and tolerated a history of abusive body cavity searches. To succeed under that

16

theory, Francetich needed to show that Oakland County had a "demonstrated . . . pattern of inadequately investigating [body cavity search] claims and, therefore, that [it had] a custom of tolerating the use of [body cavity searches] by their officers." *Smith*, 874 F.3d at 947. Francetich has identified no evidence of such a custom here.

For all of these reasons, Oakland County is entitled to summary judgment on Francetich's municipal lability claim.

## C

Finally, the Court turns to Defendants' remaining motions. Because the Court grants summary judgment in favor of Defendants on all of Francetich's claims, the Court need not rule on Defendants' motion to dismiss for failure to prosecute (ECF No. 23) or Defendants' motions *in limine* (ECF Nos. 25, 26). The Court will therefore terminate those motions without prejudice as moot.

## V

For all of the reasons explained above, Defendants' motion for summary judgment (ECF No. 19) is **GRANTED**, Defendants' motion to strike (ECF No. 29) is **DENIED**, and Defendants' motion to dismiss for failure to prosecute (ECF No. 23) and motions *in limine* (ECF Nos. 26, 27) are **TERMINATED WITHOUT PREJUDICE AS MOOT**.

**IT IS SO ORDERED**.

Dated: May 9, 2025

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

  I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 9, 2025, by electronic means and/or ordinary mail.

              <u>s/Holly A. Ryan</u>
              Case Manager
              (313) 234-5126